IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


S.D.,[1]

                    Plaintiff,

vs.                                          Case No. 19-4048-SAC

ANDREW SAUL,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.


**MEMORANDUM AND ORDER**

On July 7, 2015, plaintiff filed an application for social security disability insurance benefits and for supplemental security income benefits. The applications alleged a disability onset date of October 6, 2014. The applications were denied initially and on reconsideration. An administrative hearing was conducted on August 23, 2017 and May 9, 2018. The administrative law judge (ALJ) considered the evidence and decided on May 22, 2018 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's applications for benefits.

---

[1] The initials are used to protect privacy interests.

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). This standard is "not high," but it is "more than a scintilla." Id.

(quoting Consolidated Edison, 305 U.S. at 229). It does not require a preponderance of the evidence. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II. THE ALJ'S DECISION (Tr. 101-110).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 102-03). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional

capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that there are jobs in the economy for persons with the claimant's residual functional capacity. Id. In this case, the ALJ decided that there were jobs in the economy that plaintiff could perform with her residual functional capacity.

The ALJ made the following specific findings in her decision. First, plaintiff met the insured status requirements for benefits through September 30, 2018. Second, plaintiff has not engaged in substantial gainful activity since October 6, 2014. Third, plaintiff has the following severe impairments: anemia; diabetes mellitus; loss of vision in right eye; recurrent vitreous hemorrhage of the right eye; and degenerative joint disease at L5-S1. Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff

has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(a) except that: plaintiff can lift and carry 10 pounds occasionally; she can stand or walk 2 hours and sit 6 hours in an 8-hour workday; she cannot push or pull with lower extremities or operate foot controls; she can occasionally climb ramps and stairs, balance on uneven surfaces, and stoop; she cannot climb ladders, ropes or scaffolds, kneel, crouch or crawl; she cannot bend at the waist to the floor to complete a task; she has field of vision limitations indicating no use of hazardous moving machinery or working at unprotected heights; she can tolerate occasional exposure to vibration and to extremes of cold and heat; she cannot work where fumes or toxins are in the air; she should wear safety glasses at all times and not work in dim light; and she also cannot drive or operate machinery. Sixth, the ALJ concluded that plaintiff could not perform her past relevant work. Finally, the ALJ determined that, considering plaintiff's age, education, work experience and residual functional capacity (RFC) that there are jobs that exist in significant numbers in the national economy she can perform, such as grading clerk and police aide. The ALJ relied in part upon vocational expert testimony for the last two findings.

III.  THE DENIAL OF BENEFITS SHALL BE AFFIRMED.

Plaintiff makes numerous arguments to reverse and remand the denial of benefits. In her reply brief, she contends that

5

defendant's mistakes in formulating plaintiff's RFC at step four
is the crucial issue and that those mistakes involve plaintiff's
vision limitations and her need to be off-work or off-task because
of her multiple impairments. Doc. No. 16, pp. 3-4. The court,
nevertheless, will address all of plaintiff's arguments in the
order they were presented in the opening brief.

A. <u>Step two analysis</u>

Plaintiff argues that the ALJ committed reversible error by
failing to find that plaintiff had a "severe" impairment in her
left eye, not just her right eye. Defendant argues in part that
the ALJ considered plaintiff's vision in both eyes in determining
plaintiff's RFC, which is all that matters. This is correct.
<u>Allman v. Colvin</u>, 813 F.3d 1326, 1330 (10th Cir. 2016)("[F]ailure
to find a particular impairment severe at step two is not
reversible error when the ALJ finds that at least one other
impairment is severe.").

Plaintiff suggests that the failure to recognize plaintiff's
significant left eye problems at step two taints the step four
process. This contention makes the broad point that the RFC
formulation did not consider the combined effects of all of
plaintiff's eye problems at step four. The court will consider
that issue when discussing plaintiff's arguments against the step
four findings.

B. Step four analysis

Plaintiff makes several arguments against the ALJ's step four analysis in formulating plaintiff's RFC. Before discussing these arguments, the court reiterates that plaintiff has the burden to prove his RFC at step four. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

1. The ALJ made a comprehensive review of the record.

Plaintiff argues initially and somewhat generally that the RFC formulated by the ALJ overstates what plaintiff can do because it is not based on all the evidence the ALJ is required by SSR 96-8p to consider. Plaintiff contends that the ALJ did not properly take into account: plaintiff's past medical history with severe necrotizing fasciitis, diabetes and MSRA infection; the frequency and duration of treatment; the reports of her activities of daily living; lay evidence from her daughter; the September 18, 2015 statement of her treating physician, Dr. Deroin; the effects of plaintiff's ongoing pain and side effects of her medication; her attempts to work and the accommodations she received at work; and her need to be in a structured environment.[2]

The ALJ, however, stated more than once that she considered the entire record. (Tr. 102, 103, 105). The court may give

---

[2] Plaintiff also refers to a notation of severe neuropathic pain from a March 6, 2014 physical by Dr. Richard Brown. Doc. No. 12, p. 17. This was prior to the alleged onset date of disability and other notes from Dr. Brown's records indicate that the pain may have been controlled or subsided. The court does not believe the notation is significantly probative.

deference to this.  See <u>Flaherty v. Astrue</u>, 515 F.3d 1067, (10th Cir. 2007)(general practice is to credit lower tribunal's statement of what was considered); <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172-73 (10th Cir. 2005)(same).

The record includes documentation and testimony regarding plaintiff's activities of daily living.  The court further observes that: the ALJ discussed plaintiff's medical history (Tr. 104), including her diabetes (Tr. 106), pain medication (Tr. 105), gastroparesis (Tr. 104), necrotizing fasciitis (Tr. 108), and anemia (Tr. 105 & 107); the ALJ noted plaintiff's statement that the main condition preventing her from working is poor vision and the ALJ extensively discussed plaintiff's visual limitations (Tr. 106-07); the ALJ remarked that plaintiff's pain was well-controlled with medication and that typically plaintiff was in no acute distress and walked with a normal gait and normal motor function (Tr. 107); the ALJ discussed plaintiff's allegation that she could not work because of frequent doctor's visits (Tr. 107); and the ALJ specifically discussed and discounted the opinion of Dr. Deroin and the testimony from plaintiff's daughter.  (Tr. 108).  The ALJ also noted that the record contained several instances of post-surgery restrictions which were given little weight because they were temporary in nature and not reflective of plaintiff's overall RFC.  (Tr. 108).

2. <u>The ALJ properly considered the treating physician's</u>
<u>opinion.</u>

As to Dr. Deroin, a treating physician, the ALJ stated as
follows:

> [H]er opinion is not well-supported or consistent with
> the record. . . . Dr. Deroin completed the form on
> September 18, 2015, and on that same date, her treatment
> notes indicate her disability findings were based solely
> upon examination of the claimant's left abdomen/groin,
> where the claimant had surgical treatment in 2010 for
> necrotizing fasciitis. Yet, her treatment notes from
> that date contain no objective physical examination
> findings, and Dr. Deroin's exam two weeks earlier was
> limited to the claimant's feet and was entirely
> unremarkable. Dr. Deroin's treatment, overall, was also
> unremarkable, consisting of refilling lidocaine pain
> patches and managing the claimant's diabetes. Nowhere
> in her records did she identify functional limitations
> consistent with those set forth [in her opinion as to
> claimant's RFC]. This record is inconsistent with the
> rather drastic functional limitations Dr. Deroin
> suggested in [that opinion].

(Tr. 108)(omitting citations to exhibits). The ALJ also noted
that Dr. Deroin's opinion was inconsistent with the opinions of
other doctors and other treatment records and examination
findings. (Tr. 108).

The Tenth Circuit discussed standards governing the
evaluation of treating doctors' opinions in <u>Hamlin v. Barnhart</u>,
365 F.3d 1208, 1215 (10th Cir. 2004):

> When an ALJ rejects a treating physician's opinion, he
> must articulate "specific, legitimate reasons for his
> decision." <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213
> (10th Cir. 2001) (quotation omitted). . .
>
> Additionally, "[w]hen a treating physician's opinion is
> inconsistent with other medical evidence, the ALJ's task

is to examine the other physicians' reports to see if
they outweigh the treating physician's report, not the
other way around." <u>Id.</u> (quotation omitted). "The
treating physician's opinion is given particular weight
because of his unique perspective to the medical
evidence that cannot be obtained from the objective
medical findings alone or from reports of individual
examinations, such as consultative examinations or brief
hospitalizations." <u>Doyal</u>, 331 F.3d at 762 (quotation
omitted). If an ALJ intends to rely on a nontreating
physician or examiner's opinion, he must explain the
weight he is giving to it. 20 C.F.R. § 416.927(f)(2)(ii).
He must also give good reasons in his written decision
for the weight he gave to the treating physician's
opinion. <u>Doyal</u>, 331 F.3d at 762; see also Soc. Sec. Rul.
96-2p, 1996 WL 374188, at *5 (requiring decision to
contain reasons that are "sufficiently specific to make
clear to any subsequent reviewers the weight the
adjudicator gave to the treating source's medical
opinion and the reasons for that weight.")

An ALJ must consider the following specific factors: 1) length of

the treating relationship and frequency of examination; 2) the

nature and extent of the treatment relationship, including the

treatment provided and kind of examination or testing performed;

3) the degree to which the opinion is supported by relevant

evidence; 4) consistency with the record as a whole; 5) whether

the physician is a specialist in the area upon which the opinion

is rendered; and 6) other factors which tend to support or

contradict the opinion. <u>Goatcher v. U.S. Dept. of Health & Human</u>

<u>Services</u>, 52 F.3d 288, 290 (10th Cir. 1995)(citing 20 C.F.R. §

1527(c)(2)-(6)). But, an ALJ does not have to explicitly discuss

all of these factors. <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1258 (10th

Cir. 2007). An ALJ's reasons for declining to give controlling

weight to a doctor's opinion may also support giving the opinion no weight. See <u>Payton v. Astrue</u>, 480 Fed.Appx. 465, 469 (10th Cir. 2012)(assuming that ALJ gave no weight to a treating physician's opinion, but finding support for the ALJ's choice).

While plaintiff objects to the ALJ's treatment of Dr. Deroin's opinion at pp. 16-17 and 27-28 of her opening brief, upon review the court believes the ALJ properly considered the opinion and gave adequate reasons for discounting the opinion entirely, while finding on the basis of other evidence in the record that plaintiff's was capable of performing a limited range of sedentary employment.

3. <u>The ALJ properly considered plaintiff's visual limitations.</u>

Plaintiff next argues at pp. 18-20 of Doc. No. 12 that the RFC is deficient because it does not adequately describe plaintiff's visual acuity, depth perception and visual accommodation in a manner that would allow a vocational expert to determine whether there was past work or other jobs plaintiff could perform. Plaintiff contends this is contrary to the Program Operations Manual System (POMS).[3] Defendant denies that there were any POMS violations and argues that the ALJ properly relied upon the testimony of the vocational expert. In reply, plaintiff states

---

[3] As defendant states in his brief, the POMS is a set of policies used by the Social Security Administration to process claims. <u>McNamara v. Apfel</u>, 172 F.3d 764, 766 (10th Cir. 1999).

that while "[i]t is essentially true that defendant touched the required procedural bases . . . [the defendant's RFC formulation] does not properly describe plaintiff's visual limitations in the specific terms the defendant uses in his policies regarding the visual-vocational requirements for work." Doc. No. 16, pp. 3-4. Plaintiff's argument appears to be that the ALJ is required to make specific findings regarding plaintiff's visual acuity, depth perception and visual accommodation as part of the RFC. Plaintiff, however, does not cite case law or a POMS provision which sets down this requirement. Therefore, the court shall reject this argument.

The ALJ made the following findings regarding plaintiff's impaired vision:

> Dr. Bowen, a board certified ophthalmologist, reviewed the claimant's medical records and acknowledged she has "extensive diabetic eye disease," but he did not identify work-related limitations beyond those set forth in the RFC. . . .
>
> Additionally, although the claimant's visual acuity has fluctuated at times, Dr. Bowen testified his opinion was based on all available evidence, and even taking into account the most recent medical record, Dr. Bowen noted the claimant's vision never reached listing level and her left eye acuity, which is her best eye, had improved from 20/50 to 20/40. In fact, between February 2015 and March 2017, the claimant maintained visual acuity in her right eye of 20/25 to 20/40, and her right eye visual acuity was 20/60 without correction in December 2017. Similarly, her left eye visual acuity was repeatedly better than 20/100 with the exception of one measurement in October 2015. . . The claimant was also able to read and complete disability forms on her own.

Thus, while the claimant has had periods of decreased and blurred vision, the record overall does not support limitations beyond those set forth in the RFC.

(Tr. 106-07)(citations to exhibits omitted).

Dr. Bowen's opinion was that plaintiff had:

retinal photo coagulation to both retinae. This would reduce her side vision and could interfere with vision in dim light. She should not work in dim light or in areas where there are moving machines. She should not work or climb to heights. She should not work in areas in which there are fumes or toxins in the air since her eyes would be more sensitive to these because of the laser treatments. She should wear glasses at all times. The few recorded vision[s] with glasses show that the vision could be improved with glasses. In any work environment the glasses should be safety glasses.

(Tr. 1011).

The ALJ gave Dr. Bowen's opinion "great weight" because he had specialized knowledge in ophthalmology and his opinion was supported and consistent with the record, including other physicians' opinions and treatment records. (Tr. 107-08).

In her reply brief, plaintiff asserts that, in spite of giving Dr. Bowen's opinion "great weight," the ALJ failed to incorporate limitations which were supported by his testimony at a supplemental hearing.

At the supplemental hearing, Dr. Bowen testified that plaintiff had a history of hemorrhages and fluctuating vision that was consistent with a diagnosis of diabetic retinopathy. (Tr. 125). He stated that plaintiff's clarity of vision may reduce and then probably clear. (Tr. 127). Because plaintiff's vision is

unbalanced (right eye versus left eye) her depth perception is hampered as well as accommodation in vision and field of vision. (Tr. 127-28). As far as functional limitations, however, Dr. Bowen did not expand upon those already stated, other than to suggest that plaintiff should not drive a forklift. (Tr. 131-32). Plaintiff argues that the visual restrictions described in Dr. Bowen's "equivocal" testimony are inconsistent with work as a grading clerk or police aide which requires frequent visual acuity and accommodation. Doc. No. 12, pp. 26-7. If Dr. Bowen's testimony is ambiguous however, it is the role of the ALJ, not the court, to resolve ambiguities in the record. <u>Tillery v. Schweiker</u>, 713 F.2d 601, 603 (10th Cir. 1983).

Here, plaintiff cites the following passage from Dr. Bowen's testimony:

> This person also is diabetic and may have a hemorrhage at any point. So I would think it would be difficult to be in a circumstance where she would be necessarily called on to have good vision in even one eye."

(Tr. 131). After Dr. Bowen made this statement, the ALJ asked if there are things that "a person in her condition would be limited in her ability to work[?]" (Tr. 131). Dr. Bowen answered that such a person should wear safety glasses in a working environment and recommended that "this type of individual probably shouldn't be put in a circumstance where the visual acuity would cause a problem. For example, if she was driving a forklift or something

like that and she had a hemorrhage and she is functioning on only one eye. She could be in trouble." (Tr. 131). Counsel for plaintiff then asked if that would not also apply to a job that requires looking at computer screens and doing paperwork? (Tr. 131). Dr. Bowen answered "not really . . . because if you have a bunch of floaters you just wait for them to go away." (Tr. 131). He then clarified upon further questioning that he would not want plaintiff to be in a dangerous situation, but there would be no danger to anybody from a few seconds or minutes of blurred vision. (Tr. 132). The court believes the ALJ adequately executed her role to develop and interpret the record, including the testimony of Dr. Bowen, which was relied upon to determine that the risk of hemorrhage or other causes of visual limitations did not disqualify plaintiff from the jobs of grading clerk and police aide.

In conclusion, the court acknowledges plaintiff's claim that the ALJ's discussion of plaintiff's "residual vision capacity" is "incomplete, vague, selective and distorted." Doc. No. 16, p. 7. But, this broadly-stated rebuke and plaintiff's other arguments fail to show specifically where the ALJ has misapplied the standards or mischaracterized the evidence in the step four analysis of plaintiff's vision.

4.  The ALJ properly considered the frequency of
plaintiff's medical appointments.

        Plaintiff contends that the RFC is flawed because it does not
account for the time plaintiff would be unable to attend work
because of frequent doctor's visits.  The testimony as to this
point is limited.  A vocational expert testified that employers
will generally tolerate one unscheduled or unexcused day per month.
(Tr. 143).  Plaintiff testified that her doctor's appointments
keep her from working (Tr. 158) and plaintiff's daughter testified
that plaintiff has medical appointments once a week and sometimes
seven or eight times a month.  (Tr. 173).  Plaintiff's counsel
asserted to the ALJ that plaintiff spends three to five times a
month seeing some kind of caregiver.  (Tr. 153).  Referring to
this allegation, the ALJ stated that "[t]he claimant . . . alleged
. . . that she cannot work because of 3-5 doctor visits each month
that last up to 3 hours each, but the record does not reflect
visits at this frequency or length." (Tr. 107).  Plaintiff has
rejoined in her opening brief that the record shows 31 medical
appointments in 10 months between March 22, 2017 and February 2,
2018.  Defendant has responded that "during the 43 months in the
relevant period between the alleged onset of plaintiff's
disability and the ALJ's decision, plaintiff saw a medical provider
three or more times in a month only six occasions (i.e., less than
15% of the time):  October 2014, January 2015, February 2015, May

16

2016, June 2016, and August 2017." Doc. No. 15, p. 14. Plaintiff

has replied in part as follows:

> defendant . . . noted . . . there were *only* 6 months
> during the relevant time period in which plaintiff had
> 3 or more doctors' visits a month. This frequency of
> visits during these six months would be sufficient to
> undermine plaintiff's ability to sustain competitive
> employment per SSR 96-8p. . . . It was error for the ALJ
> to not include plaintiff's predictable need to be away
> from work and/or off-task for significant periods in
> plaintiff's RFC. The ALJ's RFC is based on the
> *presumption* that plaintiff can meet normal work
> attendance requirements notwithstanding the fact that
> substantial evidence in the record clearly shows she
> cannot.

Doc. No. 16, p. 8.

The court finds that plaintiff's evidence of medical visits

does not establish a functional limitation beyond that stated in

the ALJ's RFC. In Razo v. Colvin, 663 Fed.Appx. 710, 717 (10th

Cir. 2016), the court assumed that the plaintiff would need to

miss work at least three times per month for medical appointments

following surgery. The court held that this was not sufficient to

show he could not work on a "regular and continuing basis." First,

the court noted that the requirement for followup appointments

after surgery would not continue indefinitely. The court also

stated that "[t]o be able to perform work on a 'regular and

continuing basis' see 20 C.F.R. § 404.1545(b)&(c), one need not

keep a particular work schedule" as long as it is equivalent to 8

hours a day, for 5 days a week. Id.

The court has examined the record and acknowledges plaintiff's many medical appointments. But, the need for some of the appointments appears to have been temporary in nature because some of plaintiff's medical problems were resolved or the need for post-surgery checkups passed. Further, many of the appointments appear to be of the type which could be scheduled to accommodate work; for instance, diabetes followups, medication refills or reviews, and post-op checks. This is a factor a court may consider in deciding whether a plaintiff has carried the burden of proving his or her RFC at step four. See Cherkaoui v. Commissioner of Social Security, 678 Fed.Appx. 902, 904 (11th Cir. 2017); Barnett v. Apfel, 231 F.3d 687, 691 (8th Cir. 2000); Cindy E. v. Berryhill, 2019 WL 3417087 *5 (W.D.Wash. 2/6/2019); Goodman v. Berryhill, 2017 WL 4265685 *3 (W.D.Wash. 2017); Morin v. Colvin, 2015 WL 4928461 *9-10 (W.D.Mo. 8/15/2015); Ewing v. Astrue, 2012 WL 2450847 *2 (W.D.Okla. 6/27/2012). Upon review, the court concludes that the ALJ did not commit an error in the step four analysis by failing to properly consider the evidence of plaintiff's medical appointments.

## 5. Conclusion

Plaintiff obviously disagrees with the conclusions drawn by the ALJ in her step four analysis. But, contrary to plaintiff's contentions, the court finds that the ALJ did not ignore significantly probative evidence in the record or uncontroverted

evidence favoring a finding of disability.  Plaintiff's arguments, as described above, ask the court to reweigh the evidence, which is contrary to the court's role in these cases.  See <u>Allman</u>, 813 F.3d at 1333; <u>Hendron v. Colvin</u>, 767 F.3d 951, 954 (10th Cir. 2014).

C. <u>Step five analysis</u>

Plaintiff contends that defendant failed to satisfy the burden of showing that there were jobs plaintiff could perform in the national economy.  Plaintiff argues that the ALJ did not properly direct the vocational experts' testimony to consider plaintiff's limitations to <u>occasional</u> visual functioning and <u>occasional</u> handling, fingering and feeling.[4]  These limits were not incorporated by the ALJ in the RFC.  (Tr. 110). The court finds that plaintiff has not proved the ALJ erred when she failed to adopt those limitations.  Consequently, it was not error for the ALJ to ignore answers to hypothetical questions that included limitations which she did not accept as supported in the record. <u>Bean v. Chater</u>, 77 F.3d 1210, 1214 (10th Cir. 1995).  The court finds that the expert testimony and answers to hypotheticals relied upon or disregarded by the ALJ in his step five analysis did not lead to a faulty conclusion that plaintiff could perform work in the national economy.[5]

---

[4] This was an area probed by plaintiff's counsel's questioning.
[5] Plaintiff also notes that if plaintiff were found to have no skills that would transfer to other sedentary work, then the "Grid Rules" would dictate a finding of disability after plaintiff turned 50, as she has while this matter has been pending.  Doc. No. 12, p. 23.  It is undisputed, however, that the two vocational

D. **The ALJ properly considered plaintiff's noncompliance with medical recommendations.**

Plaintiff argues that the ALJ improperly considered plaintiff's non-compliance with diabetes recommendations in the decision to deny plaintiff's applications for benefits. The court rejects this contention. The ALJ noted evidence of plaintiff's noncompliance in a section of the opinion where she discussed her conclusion that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 106). Although the ALJ did not make the findings required by 20 C.F.R. § 404.1530 for denying or stopping benefits for noncompliance with prescribed treatment, this was not necessary here because the ALJ did not deny plaintiff's applications for this reason. See Qualls v. Apfel, 206 F.3d 1368, 1372-73 (10th Cir. 2000). Instead, the ALJ considered plaintiff's noncompliance as a factor which was inconsistent with plaintiff's statements regarding the severity of her symptoms.

E. Evidence submitted to the Appeals Council

Plaintiff argues that this case should be remanded for consideration of evidence that plaintiff submitted to the Appeals Council. Some of the evidence preceded the date of the ALJ's

experts' testimony was that plaintiff had transferrable job skills. (Tr. 141-42, 180). Therefore, the "Grid Rules" do not direct a disability finding upon this record.

decision (May 22, 2018) and some of the evidence post-dated the ALJ's decision.  But, in plaintiff's pleadings, she emphasizes the evidence from two appointments with her eye doctors – one on August 22, 2018 and one on November 14, 2018.  Doc. No. 12, p. 7-8; Doc. No. 16, p. 9-10.  The Appeals Council stated that the evidence did not relate to the period at issue in this case.

The Appeals Council is required to consider the evidence if it is:  1) new; 2) material; 3) related to the period on or before the ALJ's decision; 4) there is a reasonable probability that the additional evidence will change the outcome of the decision; and 5) there is good cause for not previously submitting the evidence. See 20 C.F.R. § 404.970(a)&(b).  Remand is warranted if the Appeals Council fails to consider qualifying new evidence.  <u>Threet v. Barnhart</u>, 353 F.3d 1185, 1191 (10th Cir. 2003).  This is a matter for the court's <u>de novo</u> review.  <u>Id.</u>

The court concurs with the Appeals Council that the evidence does not relate to the period on or before the ALJ's decision. The records describe examinations three and six months after the ALJ's decision.  The records do not purport to address plaintiff's condition on or before May 22, 2018.  These circumstances support the Appeals Council's decision.  Cf., <u>Tollett v. Barnhart</u>, 60 Fed.Appx. 263, 265 (10th Cir. 2003)(rejecting evidence relating to major depression created months after the date of the ALJ's decision); <u>Wilson v. Apfel</u>, 2000 WL 719457 *2 (10th Cir.

2000)(rejecting evidence of arthritis based upon letter written 15 months after ALJ decision although claimant complained of leg and back pain and the letter referred to ongoing treatment); Arnold v. Colvin, 2016 WL 8674690 *6 (W.D.Okla 4/29/2016)(rejecting record of arm numbness and pain made less than one month after ALJ decision ruling upon claim alleging fibromyalgia); Chevrier v. Barnhart, 2006 WL 8444088 *4 (D.N.M. 7/31/2006)(record of mental health examination dated two months after ALJ decision rejected because on its face it does not appear relevant to the time period on or before the ALJ decision on claim based in part on bipolar disorder).  Plaintiff suggests that the evidence is relevant because it backs up other testimony that she suffers from progressive conditions and that she has a reasonable chance of eye hemorrhages.  The ALJ's decision, however, did not rely upon findings which contradict this evidence.  For these reasons, the court agrees with the Appeals Council.

IV. CONCLUSION

For the above-stated reasons, the court affirms defendant's decision to deny plaintiff's application for social security benefits and shall dismiss this action to reverse the decision.

**IT IS SO ORDERED.**

Dated this 18th day of February, 2020, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge